**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| SHARON MUNDY, | ) | |
| | ) | |
| Plaintiff, | ) | 2:22-cv-31 |
| | ) | |
| v. | ) | |
| | ) | Judge Marilyn J. Horan |
| CITY OF PITTSBURGH, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

Plaintiff, Sharon Mundy, filed suit against Defendant, City of Pittsburgh, pursuant to Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), 42 U.S.C. § 1981, and 42 U.S.C. § 1983.  (ECF No. 4, at 2).  Presently, before the Court, is the City's Motion to Dismiss Ms. Mundy's Complaint.  (ECF No. 8).  The Motion to Dismiss has been fully briefed and is now ripe for decision.  For the reasons that follow, the City's Motion to Dismiss will be granted.

**I.      Facts**

Ms. Mundy was an employee of the City's Department of Public Works since June 2008. (ECF No. 4, ¶¶ 8-9).  Ms. Mundy worked in the traffic division and the Department of Public Works' graffiti removal program.  (ECF No. 4, ¶¶ 10-11).  Ms. Mundy is a member of the American Federation of State, County, and Municipal Employees (AFSCME), Local 2037, which represents workers in the City's Department of Public Works.  (ECF No. 4, at ¶ 12; ECF No. 9, at 3 n. 1).

The Complaint alleges that Ms. Mundy filed "many" requests for reasonable accommodations to enforce the "no smoking policy and mask protection due to her asthma issues."  (ECF No. 4, ¶ 13).  The Complaint further alleges that due to the City's failure to

1

provide a reasonable accommodation for her asthma, her "respiratory injury increased," and she began "taking FMLA leave and utilizing other vacation days to accommodate her asthma illness."  (ECF No. 4, ₱ 14).  The Complaint alleges that Ms. Mundy was reprimanded by a verbal warning for calling off work.  (ECF No. 4, ₱ 15).

Ms. Mundy's FMLA leave was set to expire on June 23, 2020.  (ECF No. 4, ₱ 18).  The City gave Ms. Mundy a deadline of July 9, 2020 to return to work.  (ECF No. 4, ₱ 18).  The Complaint alleges that Ms. Mundy broke her toe before July 9, 2020 and received a work restriction letter from an urgent care physician stating that she could not return to full duty until July 13, 2020.  (ECF No. 4, ₱ 19).  The Complaint alleges that the City did not consider Ms. Mundy's letter from her doctor and that she was suspended "for five days pending termination." (ECF No. 4, ₱₱ 18-20).

According to the September 29, 2020 letter from Janet Manuel, the Director of Human Resources for the City, to Philip Ameris, Jr., the Union representative, Ms. Mundy was suspended on July 10, 2020.  (ECF No. 4-2, at 4).  According to the letter, "Ms. Mundy was terminated for absenteeism, being AWOL and failure to report these absences to The Standard, a contracted City provider, where she had an open and approved intermittent FMLA leave account. And by her own admission she was aware of her FMLA leave account."  (ECF No. 4-2, at 2). The letter further states that the Department of Public Works Director, Michael Gable, offered Ms. Mundy a chance to return to work on August 4, 2020, subject to a number of probationary conditions, including that she sign a Last Chance Agreement.  (ECF No. 4-2, at 3).  The letter describes that Ms. Mundy specifically rejected a provision of the Last Chance Agreement that she could not test positive for marijuana, or she would face immediate five-day suspension pending termination.  (ECF No. 4-2, at 3-4).  The letter continues to explain that Ms. Mundy

"rejected this LCA condition because she says she does not have a drug or alcohol problem, just chronic asthma and a concern about cigarette smoke at work."  (ECF No. 4-2, at 3).  Ms. Mundy refused to sign the Last Chance Agreement, and Mr. Gable terminated her employment with the City on August 10, 2020.  (ECF No. 4-2, at 3).  The letter further describes that on August 28, 2020, Assistant Department of Public Works Director, Marcelle Newman, denied Ms. Mundy's grievance at Step II after offering Ms. Mundy the same Last Chance Agreement Terms for her to return to work.  (ECF No. 4-2, at 3).  The letter further describes that Ms. Mundy, the City, and the Union had a Step III phone conference, where Ms. Mundy indicated that she would consider signing the Last Chance Agreement.  (ECF No. 4-2, at 3).  The Complaint alleges, and the exhibits attached to the Complaint support, that pursuant to subsequent negotiations between the City, Union and Ms. Mundy, Ms. Mundy agreed upon acceptable terms for a Last Chance Agreement.  (ECF No. 4, ₧ 21, Exhibit A).  Following execution of the Last Chance Agreement, Ms. Mundy was reinstated and returned to work.  (*See* ECF No. 9, at 6-7; ECF No. 4-4, at 2). The Last Chance Agreement included a provision that if Ms. Mundy tested positive for marijuana, she would be immediately terminated.  (ECF No. 4, Exhibits A & C).  The Last Chance Agreement also contained a provision whereby Ms. Mundy waived her right to "appeal or grieve any of this discipline any further in any forum."[1]  (ECF No. 4-2, at 4 & 6; ECF No. 4-4, at 2).

After signing the Last Chance Agreement and returning to work, Ms. Mundy later tested positive for marijuana, and the City terminated her employment on November 5, 2020.  (ECF No. 4, at ₧₧ 21, 38, Exhibits A & C).  A second letter was attached to Ms. Mundy's Complaint,

---

[1] The Court notes that while Ms. Mundy attached a letter describing the terms of the Last Chance Agreement to her Complaint, she did not attach a final version of the Last Chance Agreement. (ECF No. 4-2, at 2; ECF No. 9, at 4).

which was addressed to Ms. Mundy from Mr. Gable, and was dated November 5, 2020.  (ECF No. 4-4, at 2).  This letter explains that Ms. Mundy was suspended without pay for five workdays, from October 29, 2020 through November 4, 2020.  (ECF No. 4-4, at 2).  The letter continues to explain that Ms. Mundy had until the end of the business on November 4, 2020 to "satisfactorily respond to these charges or be discharged."  (ECF No. 4-4, at 2).  The letter further explains that rather than responding to Mr. Gable, as required by the City's notice, Ms. Mundy responded to her Union Representative.  (ECF No. 4-4, at 2).  Nevertheless, the letter states that, even if Ms. Mundy had followed the proper procedures and responded to Mr. Gable rather than her Union Representative, that she still would be discharged from her employment with the City because she tested positive for marijuana, which was prohibited by the Last Chance Agreement.  (ECF No. 4-4, at 2).  The letter explains that Ms. Mundy was discharged from employment with the City as of November 5, 2020, pursuant to the marijuana provision in her Last Chance Agreement.  (ECF No. 4-4, at 2).

## II.    Standard of Review

When reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  *Eid v. Thompson*, 740 F.3d 118, 122 (3d Cir. 2014) (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The Supreme Court clarified that this plausibility standard should not be conflated with a higher probability standard.  *Iqbal*,

556 U.S. at 678.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556); *see also Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 147 (3d Cir. 2014).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678.  "Factual allegations of a complaint must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.

A pleading party need not establish the elements of a *prima facie* case at this stage; the party must only "put forth allegations that 'raise a reasonable expectation that discovery will reveal evidence of the necessary element[s].'"  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009) (quoting *Graff v. Subbiah Cardiology Assocs., Ltd.*, 2008 WL 2312671 (W.D. Pa. June 4, 2008)); *see also Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 790 (3d Cir. 2016). Nonetheless, a court need not credit bald assertions, unwarranted inferences, or legal conclusions cast in the form of factual averments.  *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 n.8 (3d Cir. 1997).  The primary question in deciding a motion to dismiss is not whether the plaintiff will ultimately prevail, but rather whether he or she is entitled to offer evidence to establish the facts alleged in the complaint.  *Maio v. Aetna*, 221 F.3d 472, 482 (3d Cir. 2000).  The purpose of a motion to dismiss is to "streamline[] litigation by dispensing with needless discovery and factfinding."  *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989).

Furthermore, "in evaluating a motion to dismiss, courts are not limited to the complaint, but may also consider evidence integral to or explicitly relied upon therein."  *Tanksley v. Daniels*, 902 F.3d 165, 172 (3d Cir. 2018) (internal quotations omitted).  "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint,

matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citation omitted).

When a court grants a motion to dismiss, the court "must permit a curative amendment unless such an amendment would be inequitable or futile." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 174 (3d Cir. 2010) (internal quotations omitted).  Further, amendment is inequitable where there is "undue delay, bad faith, dilatory motive, [or] unfair prejudice." *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).  Amendment is futile "where an amended complaint 'would fail to state a claim upon which relief could be granted.'" *M.U. v. Downingtown High Sch. E.*, 103 F. Supp. 3d 612, 631 (E.D. Pa. 2015) (quoting *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 175 (3d Cir. 2010)).  In a civil rights case, when the court grants a motion to dismiss for a failure to state a claim, the court must offer the plaintiff leave to amend, even if it was not requested by the plaintiff, "unless doing so would be inequitable or futile." *Phillips*, 515 F.3d at 246; *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007).

### III.   Discussion

As an initial matter, while courts have an obligation to read a pro se litigant's pleading liberally, a pro se plaintiff is not excused from complying with rules of procedural and substantive law.  *See Holley v. Dep't of Veteran Affairs*, 165 F.3d 244, 247-48 (3d Cir. 1999) (citing *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)).  Although courts are directed to "liberally construe pro se filings," the plaintiff "is not exempt from procedural rules or the consequences of failing to comply with them." *Jones v. Sec'y Pa. Dep't of Corr.*, 589 F. App'x 591, 593 (3d Cir. 2014).  "Courts are more forgiving of pro se litigants for filing relatively

unorganized or somewhat lengthy complaints." *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d

Cir. 2019), *cert. denied*, 140 S. Ct. 1611 (2020) (citing 5 C. Wright & A. Miller, *Federal*

*Practice and Procedure* § 1217 (3d ed. 2019). The Third Circuit has explained:

> The circumstances surrounding the particular pleading, including the nature of
> the action, the sort of relief being sought, the availability of information, and
> other practical considerations must guide the inquiry into whether the
> litigant's statement of his claim qualifies as "short and plain."

*See* Wright & Miller, *supra*, § 1217. Importantly, "judging the sufficiency of a pleading is a

context-dependent exercise." *W. Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 98 (3d

Cir. 2010). *Id.* at 93. Furthermore, a "statement of a claim may be 'plain' even if it does not

include every name, date, and location of the incidents at issue." *Id.* (citations omitted).

The City asserts that the Last Chance Agreement precludes Ms. Mundy's claims in this

case. Although Ms. Mundy did not attach the Last Chance Agreement to her Complaint, she did

attach a letter describing the terms of the Last Chance Agreement. Per this letter, the Last

Chance Agreement contains a provision that states: "Ms. Mundy and the PJCBC Union agree

that they will not appeal or grieve any of this discipline any further in any forum and she agrees

not to make any claim for her unpaid suspension or unpaid leave time here." (ECF No. 4-2, at

4). Waiver of an employment discrimination claim is an affirmative defense that must be raised

by the defendant. *Long v. Sears Roebuck & Co.*, 105 F.3d 1529, 1543 (3d Cir. 1997). An

employee may validly waive claims of discrimination against an employer if the waiver is made

"knowingly" and "willfully." *Coventry v. U.S. Steel Corp.*, 856 F.2d 514, 521-22 (3d Cir. 1988).

The Third Circuit has not spoken on the exact issue of waiver of ADA claims; however,

it has considered waiver in the context of Age Discrimination in Employment Act (ADEA)

claims. *See, e.g.*, *Long*, 105 F.3d at 1529; *Cirillo v. Arco Chem. Co.*, 862 F.2d 448 (3d Cir.

1988); *Coventry*, 856 F.2d 514 (3d Cir. 1988). In *Coventry*, the Third Circuit stated that "[i]n

light of the strong policy concerns to eradicate discrimination in employment, a review of the

totality of the circumstances, considerate of the particular individual who has executed the

release, is also necessary." *Id.* at 522-23.  Although the Third Circuit created two multi-pronged

tests for evaluating a waiver of an ADEA claim in *Coventry* and *Cirillo*, Congress superseded

these tests with the passage of the Older Workers Benefit Protection Act in 1990.  *See Long*, 105

F.3d at 1538.  As regards Ms. Mundy's case, language within the Last Chance Agreement

suggests that Ms. Mundy has waived her right to bring an employment discrimination lawsuit.

However, since waiver of any employment discrimination claim through a Last Chance

Agreement constitutes an affirmative defense, the assertion of waiver is premature at this stage

and must be pleaded as an affirmative defense.  As such, the City's Motion to Dismiss, based

upon a Last Chance Agreement waiver, will be denied without prejudice.

### A.  ADA Disability Discrimination Claims

The City argues that Ms. Mundy did not allege sufficient facts regarding her ADA

Disability Discrimination claims.  (ECF No. 9, at 8-10).  Ms. Mundy argues that she is a pro se

plaintiff and that she has satisfied the pleading requirements with regard to her ADA Disability

Discrimination claims.  (ECF No. 15, at 4-6, 9).  The Court has identified two ADA Disability

Discrimination claims within Ms. Mundy's pro se Complaint.  Her first Disability Discrimination

claim relates to her asthma condition, and her second Disability Discrimination claim relates to

her toe injury.  The Court will analyze each Disability Discrimination claim in turn.

Under the ADA, "[n]o covered entity shall discriminate against a qualified individual on

the basis of disability in regard to job application procedures, the hiring, advancement, or

discharge of employees, employee compensation, job training, and other terms, conditions, and

privileges of employment."  41 U.S.C. § 12112(a).  In order to establish a prima facie case of

8

ADA Disability Discrimination, a plaintiff must show that "(1) he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of the job; and (3) he has suffered an otherwise adverse employment decision as a result of discrimination." *Gaul v. Lucent Techs.*, 134 F.3d 576, 580 (3d Cir. 1998).

Turning to the first element of the prima facie case, a disability is defined under the ADA as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). Under the ADA, a physical impairment is defined as "[a]ny physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more body systems, such as neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genitourinary, immune, circulatory, hemic, lymphatic, skin, and endocrine." 29 C.F.R. § 1630.2(h)(1). The ADA specifies that "major life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A). "An individual is substantially limited in performing a major life activity if that individual is unable to pursue that major life activity in a comparable manner 'to most people in the general population.'" *Arrington v. Nat'l R.R. Passenger Corp.*, 721 F. App'x 151, 154 (3d Cir. 2018) (quoting 29 C.F.R. § 1630.2(j)(1)(ii)).

Under the second element of the prima facie case, a "qualified individual" is a person who, "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). EEOC Regulations divide the "qualified individual" inquiry into two prongs. *Deane v. Pocono Med.*

*Ctr.*, 142 F.3d 138, 145 (3d Cir. 19998).  "First, a court must determine whether the individual satisfies the requisite skill, experience, education and other job-related requirements of the employment position that such individual holds or desires."  *Id.* (citing 29 C.F.R. § 1630, app. § 1630.2(m)).  "Second, it must determine whether the individual, with or without reasonable accommodation, can perform the essential functions of the position held or sought."  *Id.* (citing 29 C.F.R. § 1630, app. § 1630.2(m)).

The Third Circuit Court of Appeals follows a two-step process to determine whether the individual can perform the essential functions of the job with or without a reasonable accommodation.  *Id.* at 146.  "First, a court must consider whether the individual can perform the essential functions of the job without accommodation.  If so, the individual is qualified (and, *a fortiori*, is not entitled to accommodation)."  *Id.*  If the individual cannot perform the essential functions of the job without accommodation, "then the court must look to whether the individual can perform the essential functions of the job with a reasonable accommodation.  If so, the individual is qualified.  If not, the individual has failed to set out a necessary element of the *prima facie* case."  *Id.*

A job's essential functions are defined by EEOC Regulations as those that are "fundamental" to the job rather than "marginal."  *Skerski v. Time Warner Cable Co.*, 257 F.3d 273, 278 (3d Cir. 2001) (citing 29 C.F.R. § 1630.2(n)(1)).  Per the applicable Regulations, "a job function may be considered essential" for any of the following reasons: "(i) The function may be essential because the reason the position exists is to perform that function; (ii) The function may be essential because of the limited number of employees available among whom the performance of that job function can be distributed; and/or (iii) The function may be highly specialized so that the incumbent in the position is hired for his or her expertise or ability to perform the particular

function." 29 C.F.R. § 1630.2(n)(2).  The Regulations also include a list of evidence that a Court

may consider in determining whether a particular function is essential:

> (i) The employer's judgment as to which functions are essential;

> (ii) Written job descriptions prepared before advertising or interviewing applicants for the job;

> (iii) The amount of time spent on the job performing the function;

> (iv) The consequences of not requiring the incumbent to perform the function;

> (v) The terms of a collective bargaining agreement;

> (vi) The work experience of past incumbents in the job; and/or

> (vii) The current work experience of incumbents in similar jobs.

29 C.F.R. § 1630.2(n)(3).  Whether a particular function of a job is essential is "a factual

determination that must be made on a case by case basis." *Skerski*, 257 F.3d at 278 (quoting 29

C.F.R. § 1630, app. § 1630.2(n)).

A reasonable accommodation under the ADA includes: "job restructuring, part-time or

modified work schedules, reassignment to a vacant position, acquisition or modification of

equipment or devises, appropriate adjustment or modifications of examinations, training

materials or policies, the provision of qualified readers or interpreters, and other similar

accommodations for individuals with disabilities."  42 U.S.C. § 12111(9)(B).  EEOC

Regulations define a reasonable accommodation as "modifications or adjustments to the work

environment, or to the manner or circumstances under which the position held or desired is

customarily performed, that enable a qualified individual with a disability to perform the

essential functions of that position." 29 C.F.R. § 1630.2(o)(1)(ii).

As to the third element of a plaintiff's prima facie case, an adverse employment action is

"an action by an employer that is serious and tangible enough to alter an employee's

compensation, terms, conditions, or privileges of employment." *Komis v. Sec'y of the U.S. Dep't of Labor*, 918 F.3d 289, 292 (3d Cir. 2019) (internal quotations omitted).  Adverse employment actions include acts related to the "hiring, advancement, or discharge of employees." 42 U.S.C. § 12112(a).

If the plaintiff establishes the prima facie case, "the burden of production then shifts to the employer to articulate some legitimate, nondiscriminatory reason" for the adverse employment decision.  *Olson v. GE Astrospace*, 101 F.3d 947, 951 (3d Cir. 1996) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).  Once the employer has done so, the burden then shifts back to the plaintiff, who "must show by a preponderance of the evidence that the employer's proffered explanation was pretextual." *Id.*

The Court will first consider Ms. Mundy's ADA Disability Discrimination claim as related to her asthma condition.  Under the first element of Ms. Mundy's prima facie case, Ms. Mundy must demonstrate that she is a disabled person within the meaning of the ADA.  Ms. Mundy's asthma condition could be considered a physical impairment that impacts her respiratory system.  The alleged major life activity that is impaired by Ms. Mundy's asthma condition is her ability to breathe.  Other cases that have considered whether asthma constitutes a disability under the ADA have found that such a plaintiff could qualify as a disabled individual where the condition severely impairs "an individual's respiratory capacity as compared to an average person in the general population." *Adams v. Commonwealth of Penn.*, 1:06-CV-2154, 2009 WL 2707601, at *5 (M.D. Pa. Aug. 25, 2009); *see also Davis v. Davis Auto, Inc.*, 10-CV-03105, 2011 WL 5902220, at *6 (E.D. Pa. Nov. 22, 2011).  "While there is no bright line rule for when the plaintiff's ability to breathe is more severely impaired than the average person, ADA protections are not usually triggered unless the ailments are so debilitating that they limit the

ability to hold a conversation or move about freely even when the plaintiff takes available, mitigating medications." *Id.* (citing *Gallagher v. Sunrise Assisted Living of Haverford*, 268 F.Supp.2d 436, 441 (E.D. Pa. 2003)).  Third Circuit courts have allowed plaintiffs to surmount summary judgment where they have been able to demonstrate that they suffer from a long-term breathing disorder that requires "continued vigilance to prevent debilitating attacks."  *Adams*, 2009 WL 2707601, at *6.  In contrast, "[i]ntermittent breathing problems or those that are well-controlled with medication generally do not constitute an impairment under the ADA."  *Id.*

Here, the Complaint does not contain adequate details regarding Ms. Mundy's asthma condition to survive the present Motion to Dismiss.  While an asthma condition can constitute a disability that impairs a major life activity, Ms. Mundy's Complaint contains no allegations of whether her asthma condition severely impairs her respiratory capacity as compared to an average person in the general population.  Ms. Mundy's Complaint does not provide any details or information regarding her asthma diagnosis, whether she is taking medications to control her asthma condition, or the severity of Ms. Mundy's asthma condition.  Ms. Mundy does not allege in her Complaint that her asthma condition is so debilitating as to limit her ability to hold a conversation or to move about freely.  As such, Ms. Mundy did not sufficiently plead facts surrounding her asthma condition to satisfy the disability element of her prima facie ADA Disability Discrimination claim with regard to her asthma condition.

Under the second element of the prima facie case, Ms. Mundy's Complaint must show that she is a qualified individual who can perform the essential functions of the job with or without a reasonable accommodation.  Again, Ms. Mundy's Complaint does not contain adequate information about her job duties and responsibilities within the Department of Public Works to survive the present Motion to Dismiss.  Although Ms. Mundy's Complaint alleges in a

conclusory fashion that she could satisfy the job requirements with a reasonable accommodation, her Complaint contains no allegations of the position that she held, the essential functions of her job, and whether she could perform such functions.  As such, Ms. Mundy did not sufficiently plead facts surrounding the second element of her prima facie ADA Disability Discrimination claim with regard to her asthma condition.

Finally, under the third element of the prima facie case, Ms. Mundy's Complaint must show that she suffered an adverse employment action as a result of discrimination for her asthma condition.  Ms. Mundy alleges that she was suspended, terminated, and forced to sign a Last Chance Agreement as a result of her asthma condition.  However, Ms. Mundy's Complaint and the exhibits attached to her Complaint could also suggest that Ms. Mundy was suspended, terminated, and forced to sign a Last Chance Agreement due to her failure to return to work upon the expiration of her FMLA leave and her failure to report her absences to the Standard. Regardless of why Ms. Mundy was ultimately suspended, terminated, and forced to sign a Last Chance Agreement, Ms. Mundy's Complaint does not plead adequate information regarding such circumstances to meet the third element of her prima facie case with regard her ADA Disability Discrimination claim regarding her asthma condition.  As Ms. Mundy did not plead sufficient facts concerning her ADA Disability Discrimination claim with regard to her asthma condition, the City's Motion to Dismiss will be granted as to said claim.

In that Ms. Mundy filed her Complaint pro se, she will be afforded leave to amend should she have more factual detail to support her ADA Disability Discrimination claim with regard to her asthma condition.  As the Court cannot say that amendment would be inequitable or futile, Ms. Mundy is granted leave to amend her Complaint for her ADA Disability Discrimination claim with regard to her asthma condition.

The Court will now consider Ms. Mundy's ADA Discrimination claim as related to her toe injury.  Under the first element of Ms. Mundy's prima facie case, Ms. Mundy must demonstrate that she is a disabled person within the meaning of the ADA.  Significant to Ms. Mundy's claim of ADA Disability Discrimination claim related to her toe injury, "[a] nonpermanent or temporary condition cannot be a substantial impairment under the ADA." *Sulima v. Tobyhanna Army Depot*, 602 F.3d 177, 185 (3d Cir. 2010).  In this case, Ms. Mundy's Complaint contains no allegations that her toe injury was a permanent condition.  In fact, her Complaint alleges that she broke her toe before July 9, 2020 and received a work restriction letter from an urgent care physician stating that she could not return to full duty until July 13, 2020.  (ECF No. 4, ⁋ 19).  As Ms. Mundy alleges on the face of her Complaint that she only required a four-day work restriction due to her toe injury, she does not satisfy the disability element of her prima facie ADA Disability Discrimination claim with regard to her toe injury.  As there is no set of facts that Ms. Mundy can plead to establish an ADA Disability Discrimination claim with regard to her toe injury, the Court will not analyze the second and third elements of Ms. Mundy's prima facie case.  As Ms. Mundy's toe injury does not qualify as a disability under the ADA, the City's Motion to Dismiss will be granted as to Ms. Mundy's ADA Disability Discrimination claim for her toe injury.  Because Ms. Mundy's toe injury was nonpermanent and temporary condition, any amendment to her Complaint would be futile.  As such, Ms. Mundy is not granted leave to amend her Complaint with regard to her ADA Disability Discrimination claim for her toe injury.

### B.  ADA Failure to Accommodate Claims

The City does not specifically address Ms. Mundy's ADA Failure to Accommodate claims, but generally argues that Ms. Mundy did not allege sufficient facts regarding any ADA

claims within her Complaint.  (ECF No. 9, at 8-10).  Ms. Mundy argues that she is a pro se plaintiff and that she has satisfied the pleading requirements with regard to her ADA Failure to Accommodate claims.  (ECF No. 15, at 4-6, 9).

The Court identifies two Failure to Accommodate claims within Ms. Mundy's pro se Complaint.  Like her ADA Disability Discrimination claims discussed above, Ms. Mundy's first Failure to Accommodate claim relates to her asthma condition, and her second Failure to Accommodate claim relates to her toe injury.   The Court will analyze each Failure to Accommodate claim in turn.

The ADA prohibits covered entities from "discriminat[ing] against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).  Such prohibited discrimination includes "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilitates, privileges, advantages, or accommodations to individuals with disabilities."  42 U.S.C. § 12182(b)(2)(A)(ii).  Once a qualified individual with a disability has requested an accommodation, the employer has a good faith duty to engage in the "interactive process" with the employee to determine whether the employee has a disability and whether a reasonable accommodation exists.  *Williams v. Phil. Hous. Auth. Police Dep't*, 380 F.3d 751, 772 (3d Cir. 2004).  To support a claim for a failure to accommodate under the ADA, a plaintiff must establish: "(1) he was disabled and his employer knew it; (2) he requested an accommodation or assistance; (3) his employer did not make a good faith effort to assist; and (4) he could have been reasonably accommodated."  *Capps v. Mondelez Global, LLC*, 847 F.3d 144, 157 (3d Cir. 2017).

The Court will first consider Ms. Mundy's ADA Failure to Accommodate claim  as related to her asthma condition.  Ms. Mundy's Complaint alleges that she requested accommodation for her asthma condition.  In order to establish an ADA Failure to Accommodate claim, Ms. Mundy must demonstrate that she is a qualified individual with a disability.  As discussed above, Ms. Mundy has not pled sufficient facts to show that her asthma condition is considered to be a disability under the ADA.  Ms. Mundy also has not pled sufficient facts to show that she is a qualified individual who can perform the essential functions of the job with or without reasonable accommodation.  Thus, Ms. Mundy's Complaint cannot satisfy the initial requirements of her ADA Failure to Accommodate claim for her asthma condition.

Turning to the second element of Ms. Mundy's Failure to Accommodate Claim regarding her asthma condition, Ms. Mundy's Complaint must demonstrate that she requested an accommodation or assistance from the City.  Here, the Complaint provides no information regarding the details of Ms. Mundy's alleged accommodation claim.  The Complaint does not explain whether the alleged accommodation requests were made orally or in writing, or whether they were submitted to a supervisor or someone who was in a position to meaningfully address or respond to the requests.  The only factual details contained within Ms. Mundy's Complaint is that she made multiple requests for the City to enforce its no smoking policy as it exacerbated her asthma.  Because Ms. Mundy did not include any other factual details surrounding this accommodation request, her Failure to Accommodate claim for her asthma condition also fails at the second step of the *Capps* test.

As Ms. Mundy's Failure to Accommodate claim for her asthma condition fails at initial steps of the *Capps* test, the Court will not analyze the third and fourth elements.  As Ms. Mundy

did not plead sufficient facts concerning her ADA Failure to Accommodate claim with regard to her asthma condition, the City's Motion to Dismiss will be granted as to said claim.

In that Ms. Mundy filed her Complaint pro se, she will be afforded leave to amend should she have more factual detail to support her ADA Failure to Accommodate claim with regard to her asthma condition.  As the Court cannot say that amendment would be inequitable or futile, Ms. Mundy is granted leave to amend her Complaint for her ADA Failure to Accommodate claim with regard to her asthma condition.

As regards Ms. Mundy's ADA Failure to Accommodate claim related to her toe injury, Ms. Mundy must demonstrate that she is a qualified individual with a disability.  As discussed above, a temporary or nonpermanent condition cannot establish substantial impairment for the purposes of the ADA.  As the face of Ms. Mundy's Complaint demonstrates that her toe injury was a non-permanent four-day injury, Ms. Mundy does not establish that she is a disabled person for the purposes of the ADA.  As such, Ms. Mundy does not establish her ADA Failure to Accommodate claim for her toe injury.  As there is no set of facts that Ms. Mundy can plead to establish an ADA Failure to Accommodate claim with regard to her toe injury, the Court will not analyze the remaining elements of her ADA Failure to Accommodate claim.  Because Ms. Mundy's toe injury does not qualify as a disability under the ADA, the City's Motion to Dismiss will be granted as to said claim.  In so far as Ms. Mundy's toe injury was a nonpermanent and temporary condition, any amendment to her Complaint would be futile.  As such, Ms. Mundy is not granted leave to amend her Complaint with regard to her ADA Failure to Accommodate claim for her toe injury.

## C.  ADA Retaliation Claim

The City argues that Ms. Mundy did not allege sufficient facts regarding her ADA Retaliation claim.  (ECF No. 9, at 8-10).  Ms. Mundy argues that she is a pro se plaintiff and that she has satisfied her pleading requirements with regard to her ADA Retaliation claim.  (ECF No. 15, at 4-6, 9).

As to Ms. Mundy's ADA Retaliation claim, the ADA prohibits discrimination "against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). The elements to prove an ADA retaliation claim are: (1) the plaintiff engaged in protected conduct; (2) the plaintiff suffered an adverse employment action by the defendant; and (3) there is a causal relationship between them.  *Williams*, 380 F.3d at 759.  Even where a plaintiff has not pled sufficient facts to constitute a disability under the ADA, "the ADA retaliation provision protects 'any individual' who has opposed any act or practice made unlawful by the ADA or who has made a charge under the ADA." *Krouse v. American Sterilizer Co.*, 126 F.3d 494, 502 (3d Cir. 1997).  Thus, "[a]n individual who is adjudged not to be a 'qualified individual with a disability' may still pursue a retaliation claim under the ADA." *Id.*

First, Ms. Mundy must prove she engaged in protected conduct under the ADA. Relevant here, an alleged request for an accommodation could qualify as protected conduct if the plaintiff had a reasonable, good faith belief that the requested accommodation was necessary and appropriate. *Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 191 (3d Cir. 2003).  In this case, Ms. Mundy alleges that she requested accommodation for her asthma condition; however, as discussed above, she did not sufficiently plead facts surrounding her alleged accommodation

request to support her claim for retaliation.  As such, Ms. Mundy cannot satisfy the first element of her ADA Retaliation claim.

Second, Ms. Mundy must prove the City took adverse employment action against her. Ms. Mundy claims that her July 9, 2020 suspension, the negotiation process involving the Last Chance Agreement, and her August 10, 2020 termination were adverse employment actions that occurred as a result of her engagement in protected activities of requesting accommodation for her asthma condition and broken toe.  Being suspended from work, having to sign a Last Chance Agreement, and eventual termination from work can constitute adverse employment consequences for the purposes of an ADA Retaliation claim.  As such, and at this stage, Ms. Mundy's pro se Complaint contains adequate factual material regarding the adverse employment action prong of Ms. Mundy's prima facie ADA retaliation case.

Finally, Ms. Mundy must prove there is a causal link between her protected conduct and the alleged adverse employment actions taken against her.  To show the existence of a causal link, a plaintiff must plead facts showing "an unusually suggestive temporal proximity" or "a pattern of antagonism coupled with timing to establish a causal link." *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007).  Ms. Mundy's pro se Complaint does not satisfy the causation element for her prima facie ADA retaliation claim.  Although Ms. Mundy's claim that her accommodation requests for both her asthma condition and her broken toe caused her termination, Ms. Mundy's Complaint also suggests other reasons for her termination.  As such, the conclusory nature of Ms. Mundy's ADA Retaliation claim is not sufficient to support causation.  Ms. Mundy has not plead sufficient facts to show that the adverse employment actions taken against her were in retaliation for her participation in protected activities under the ADA.  As Ms. Mundy did not plead sufficient facts as to the causation element of her prima facie

ADA Retaliation claim, the City's Motion to Dismiss will be granted as to said claim.  As the Court cannot say that amendment would be inequitable or futile, Ms. Mundy is granted leave to amend her Complaint in regard to her ADA Retaliation claim.

### D.  Title VII Retaliation Claim

The City argues that Ms. Mundy did not allege sufficient facts regarding her Title VII Retaliation claim.  (ECF No. 9, at 8-10).  Ms. Mundy argues that she is a pro se plaintiff and that she has satisfied her pleading requirements with regard to her Title VII Retaliation claim.  (ECF No. 15, at 4-6, 9).

First, as to Ms. Mundy's Count I Title VII Retaliation claim, Title VII prohibits discrimination against any individual "because of such individual's race, color, religion, sex, or national origin."  42 U.S.C § 2000e-2(a)(1).  Title VII also prohibits an employer from discriminating against an employee who has opposed an employer's discriminatory conduct or "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" related to an employer's discriminatory conduct.  42 U.S.C. § 2000e-3(a).  To establish a prima facie case for Title VII retaliation, a plaintiff must show that (1) she engaged in conduct protected by Title VII; (2) her employer took adverse action against her; and (3) a causal link existed between her protected conduct and the employer's adverse action. *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016).

Ms. Mundy's Complaint contains no allegations that she engaged in any protected activity related to her race, color, religion, sex or national origin.  As Ms. Mundy's Complaint contains no facts related to a Title VII protected activity related to her retaliation claim, the City's Motion to Dismiss will be granted as to said Title VII Retaliation claim.  As the Court

cannot say that amendment would be inequitable or futile, Ms. Mundy is granted leave to amend her Complaint in regard to her Title VII Retaliation claim.

### E.  Section 1981 Retaliation Claim

The City of Pittsburgh argues that § 1981 prohibits intentional racial discrimination, but that Ms. Mundy's Complaint does not contain any such allegations of racial discrimination. (ECF No. 9, at 14).  Ms. Mundy argues that she is a pro se plaintiff and that she has satisfied her pleading requirements regarding her Section 1981 Retaliation Claim.  (ECF No. 15, at 4-6).

Claims brought under § 1981 require a charge of discrimination based upon race.  To establish a prima facie case of retaliation under § 1981, a plaintiff must show that "(1) he engaged in protected activity, (2) his employer took an adverse employment action against him, and (3) there was a causal connection between his participation in the protected activity and the adverse employment action."  *Estate of Oliva ex rel. McHugh v. New Jersey*, 604 F.3d 788, 798 (3d Cir. 2010) (citation omitted).

Ms. Mundy's Complaint contains no allegations of any protected activity related to race. Thus, she fails to plead sufficient facts to meet the first element for a § 1981 Retaliation claim. As such, the City's Motion to Dismiss will be granted as to Ms. Mundy's § 1981 Retaliation claim.  As the Court cannot say that amendment would be inequitable or futile, Ms. Mundy is granted leave to amend her Complaint in regard to her Section 1981 Retaliation claim.

### F.  Procedural Due Process Claims

The City argues that Ms. Mundy "was not denied any due process; in fact, she was afforded due process regarding her absenteeism, and such process resulted in her reinstatement. She was subject to an agreed-upon period of probation during her ultimate termination and was not entitled to a determination of 'just cause.'"  (ECF No. 9, at 12).  Ms. Mundy argues that she

is a pro se plaintiff and that she has met the pleading requirements to satisfy her Procedural Due Process claims.  (ECF No. 15, at 7-9).

The Fourteenth Amendment provides that no person shall be deprived "of life, liberty, or property, without due process of law."  *Stelle v. Cicchi*, 855 F.3d 494, 501 (3d Cir. 2017).  "The Fourteenth Amendment places procedural constraints on the actions of government that work a deprivation of interests enjoying the stature of 'property' within the meaning of the Due Process Clause."  *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 9 (1978).  "In constitutional parlance, the claimant must have a legitimate claim of an entitlement" such that "a claimant must show an entitlement to a property interest created by a state statute or regulation or arising from government policy or a mutually explicit understanding."  *Carter v. City of Phila.*, 989 F.2d 117, 120 (3d Cir. 1993).  The procedural aspect of the Due Process Clause guarantees the availability of certain procedural mechanisms, typically the right to notice and a hearing before the government can deprive an individual of life, liberty, or a property interest.  *Washington v. Lehigh Cty. Dist. Attorney's Off.*, 21-159, 2021 WL 2108985, at *6 (E.D. Pa. May 25, 2021).  In order to establish a claim for a violation of procedural due process, a plaintiff "must establish both a deprivation of an individual interest that is encompassed within the Fourteenth Amendment's protection of life, liberty, or property" and the absence of procedures that "provide due process of law."  *In re Energy Future Holdings Corp.*, 949 F.3d 806, 822 (3d Cir. 2020).

The Complaint alleges that Ms. Mundy was terminated from her position with the City twice.  First, she was terminated on August 10, 2020 after she did not return to work upon the expiration of her FMLA leave on July 9, 2020.  Second, she was terminated on November 5, 2020 after she tested positive for marijuana.  As such, the Court will examine Ms. Mundy's Procedural Due Process claims for each termination separately.

Government employees' property interests in their jobs are protected by the Due Process Clause of the Constitution. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985). *Loudermill* requires that a public employee with a property interest in his or her employment "is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Id.* "All the process that is due is provided by a predetermination opportunity to respond, coupled with post-termination administrative procedures." *Id.* at 547-48. Ms. Mundy, as a government employee, was entitled to these due process rights. However, Ms. Mundy's Complaint does not plead the absence of procedures concerning due process. She alleges in her Complaint that she was often absent from work due to her asthma issues. By July 9, 2020, she had used up the entirety of her FMLA time, and the City expected her to return to work. When she failed to report to work by July 9, 2020, she was suspended for five days pending termination. Ms. Mundy had the chance to return to work on August 4, 2020, subject to a number of probationary conditions, including that she sign a Last Chance Agreement. Specifically, Ms. Mundy rejected a provision of the Last Chance Agreement that she could not test positive for marijuana, or she would face immediate five-day suspension pending termination. Ms. Mundy refused to sign the Last Chance Agreement, and the City terminated her employment on August 10, 2020. On August 28, 2020, Ms. Mundy's grievance was denied at Step II after the City again offered to reinstate her employment should she sign the Last Chance Agreement. At the Step III phone conference between Ms. Mundy, the City and her Union, Ms. Mundy indicated that she would consider signing the Last Chance Agreement. Following further negotiation between Ms. Mundy, the City and her Union, Ms. Mundy signed the Last Chance Agreement, which included a provision that if Ms. Mundy tested positive for marijuana, her employment would be immediately terminated. The face of her

Complaint demonstrates that Ms. Mundy was afforded procedural due process by the City.  After her July 10, 2020 suspension pending termination, Ms. Mundy was notified of the reasons for her termination; she was afforded opportunity to be heard; and she actively participated in proceedings leading to her return to work.  After her suspension on July 10, 2020, Ms. Mundy, the City and her Union collaborated in the drafting of the Last Chance Agreement.  When such negotiations were unsuccessful, the City terminated Ms. Mundy's employment on August 10, 2020.  Even after her August 10, 2020 termination, Ms. Mundy, the City and her Union collaborated in the drafting of the Last Chance Agreement that eventually returned her to work.  As such, the City did not deprive Ms. Mundy of her procedural due process rights with regard to her August 10, 2020 termination.  As such, the City's Motion to Dismiss Ms. Mundy's Procedural Due Process claim, with regard to her August 2020 termination, will be granted.  As Ms. Mundy is a pro se plaintiff, she will be granted leave to amend her Complaint with regard to her Procedural Due Process claim for her August 2020 termination.

Turning to the November 2020 termination, Ms. Mundy has likewise not met her pleading requirement to establish that her procedural due process rights were violated when the City terminated her employment on November 5, 2020.  Employers use Last Chance Agreements to put an employee on notice that, if the employee fails to comply with the provisions of the Agreement, his or her employment will be terminated.  *United Steelworkers of Am., ALF-CIO-CLC United Steelworkers of Am., Local Union No. 1165 v. Lukens Steel Co., Div. of Lukens, Inc.*, 969 F.2d 1468, 1476-78 (3d Cir. 1992).  The exhibits attached to Ms. Mundy's Complaint support the City's claim that Ms. Mundy was active in the negotiations regarding the terms and provisions of the Last Chance Agreement.  After returning to work, Ms. Mundy ultimately tested positive for marijuana, which was agreed upon as a condition that would effect her immediate

25

termination.  Such condition was expressly set forth within the Last Chance Agreement.  Further, the exhibits attached to the Complaint support that Ms. Mundy received notice of the reasoning for the City's action to suspend her and for her eventual termination.  She also was given an opportunity to respond to the City's notice.  As detailed within Mr. Gable's November 5, 2020 letter, Ms. Mundy did not respond directly to Mr. Gable but instead sent a response to her Union Representative.  As detailed within the letter, even if Ms. Mundy had responded directly to Mr. Gable rather than her Union Representative, her response would still be unsatisfactory given that she tested positive for marijuana, which was prohibited by the Last Chance Agreement. Accordingly, she has not met her burden of showing that she was deprived of her procedural due process rights with regard to her November 2020 termination.  As such, the City's Motion to Dismiss will be granted as to Ms. Mundy's Procedural Due Process claim with regard to her November 2020 termination.  As the Court cannot say that amendment would be inequitable or futile, Ms. Mundy is granted leave to amend her Complaint with regard to her Procedural Due Process claim for her November 2020 termination.

## IV.    Conclusion

For the reasons stated above, the City of Pittsburgh's Motion to Dismiss will be granted as to all counts.  Ms. Mundy may file an Amended Complaint by June 22, 2022.  If Ms. Mundy files an Amended Complaint, the City shall file its responsive pleading within 14 days of Ms. Mundy's filing of an Amended Complaint, or by July 6, 2022, whichever occurs first.  An appropriate Order will be entered.

DATE: June 8, 2022

Marilyn J. Horan
United States District Judge