**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| SHARON MUNDY, | ) | |
| | ) | |
| Plaintiff, | ) | 2:22-cv-31 |
| | ) | |
| v. | ) | |
| | ) | Judge Marilyn J. Horan |
| CITY OF PITTSBURGH, | ) | |
| | ) | |
| Defendant. | ) | |

<u>**MEMORANDUM OPINION**</u>

Plaintiff, Sharon Mundy, brings a four-count, Second Amended Complaint against Defendant, City of Pittsburgh, alleging claims for violations of Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), the Rehabilitation Act of 1973, 42 U.S.C. § 1981, and 42 U.S.C § 1983.  (ECF No. 36).

Ms. Mundy's first Complaint brought claims against the City pursuant to Title VII of the Civil Rights Act of 1964, the ADA, 42 U.S.C. § 1981, and 42 U.S.C. § 1983.  (ECF No. 4, at 2). The City filed a Motion to Dismiss Ms. Mundy's Complaint in its entirety.  (ECF No. 8).  On June 8, 2022, this Court granted the City's Motion to Dismiss, but granted Ms. Mundy leave to amend her ADA Disability Discrimination claim with regard to her asthma condition, her ADA Failure to Accommodate claim related to her asthma condition, her ADA Retaliation claim, her Title VII Retaliation claim, her § 1981 Retaliation claim, and her Procedural Due Process claims. (ECF No. 21, at 1-2).

Presently, before the Court, is the City's Motion to Dismiss Ms. Mundy's Second Amended Complaint.  (ECF No. 41).  Ms. Mundy filed her Response, (ECF No. 44), and the City filed its Reply, (ECF No. 45).  The Motion to Dismiss has been fully briefed and is now ripe

1

for decision.  For the reasons that follow, the City's Motion to Dismiss will be denied in part and granted in part.

## I.   Facts

Ms. Mundy was an employee of the City's Department of Public Works from June 2008 until her termination in November 2020.  (ECF Nos. 36, ¶¶ 7-8; 36-13, at 2).  Ms. Mundy worked in the traffic division and the Department of Public Works' graffiti removal program. (ECF No. 36, ¶¶ 9-10).  Ms. Mundy is a member of the American Federation of State, County, and Municipal Employees (AFSCME), Local 2037, which represents workers in the City's Department of Public Works.  (ECF No. 36, ¶ 11; ECF No. 42, at 3).

The Second Amended Complaint alleges that Ms. Mundy has suffered from depression and a severe case of asthma since 2009.  (ECF No. 36, ¶ 12).  Ms. Mundy has attached doctor's notes to her Second Amended Complaint, which states that Ms. Mundy suffers from severe allergies, asthma, and anxiety.  (ECF Nos. 36-1; 36-2).  On March 5, 2019, Ms. Mundy's internal medicine doctor wrote a letter on her behalf, explaining that "Ms. Mundy's asthma/allergies become worse with exposure to dust, resins, paint fumes, smoke, and mold spores.  If exposed to irritant this causes Ms. Mundy to have chest tightness, shortness of breath, and wheezing."  (ECF Nos. 36-2, at 3).  On October 15, 2020, Ms. Mundy's internal medicine doctor also wrote a letter on her behalf, explaining that "triggers for her allergies are smoke, paint, dust, an [sic] other resins when exposed her allergies become worse."  (ECF No. 36-2, at 2).  Ms. Mundy takes several medications for her allergy, asthma, and anxiety conditions.  (ECF Nos. 36, ¶ 14; 36-3). These medications include: predniSONE, albuterol, fluticasone propion-salmeterol, ibuprofen, and omeprazole.[1]  (ECF No. 36-3, at 2).

---

[1] The Court takes judicial notice that none of these medications are typically prescribed to treat anxiety or depression.

The Second Amended Complaint alleges that Ms. Mundy requested that the City reinforce its no smoking and masking policy due to her asthma issues.  (ECF No. 36, ⁋ 15).  Ms. Mundy attaches an April 1, 2020 email correspondence with her City human resources manager confirming that she discussed the issue of employees smoking indoors and within work vehicles. (ECF No. 36-4, at 2).

The Second Amended Complaint further alleges that, while the City made attempts to enforce its COVID-19 masking policy, it failed to respond to Ms. Mundy's complaints about smoking indoors and within work vehicles.  (ECF No. 36, ⁋ 18).  Ms. Mundy attaches an email correspondence from the Director of the Department of Public Works that reminded workers to comply with the City's masking and social distancing policy, but it did not include any mention of the City's smoking policy.  (ECF No. 36-6, at 2).

The Second Amended Complaint alleges that, due to the City's failure to provide a reasonable accommodation for her asthma, her "respiratory injury increased," and she began "taking FMLA leave and utilizing other vacation days to accommodate her asthma illness." (ECF No. 36, ⁋ 19).  The Second Complaint further alleges that Ms. Mundy was reprimanded by a verbal warning for calling off work.  (ECF No. 36, ⁋ 20).

Ms. Mundy's FMLA leave was set to expire on June 23, 2020.  (ECF No. 36, ⁋ 21).  The City gave Ms. Mundy a deadline of July 9, 2020 to return to work.  (ECF No. 36, ⁋ 22).  On July 10, 2020, Ms. Mundy received a medical note from her internal medicine doctor that stated "Please excuse Ms. Sharon Mundy from work because of illnesses (1) Acute Anxiety (2) Severe Asthma (3) Fracture of Toe No-5 Right."  (ECF No. 36-7, at 2).  The Second Amended Complaint alleges that the City did not consider Ms. Mundy's letter from her doctor and that she was suspended "for five days pending termination."  (ECF No. 36, ⁋ 24).

According to a September 29, 2020 letter from Janet Manuel, Director of Human Resources for the City, to Philip Ameris, Jr., Union representative, Ms. Mundy was suspended on July 10, 2020.  (ECF No. 36-9, at 3).  According to the letter, "Ms. Mundy was terminated for absenteeism, being AWOL and failure to report these absences to The Standard, a contracted City provider, where she had an open and approved intermittent FMLA leave account.  And by her own admission she was aware of her FMLA leave account."  (ECF No. 36-9, at 2).  The letter further states that the Department of Public Works Director, Michael Gable, offered Ms. Mundy a chance to return to work on August 4, 2020, subject to a number of probationary conditions, including that she sign a Last Chance Agreement.  (ECF No. 36-9, at 3).  The letter describes that Ms. Mundy specifically rejected a provision of the Last Chance Agreement, wherein she could not test positive for marijuana or she would face immediate five-day suspension pending termination.  (ECF No. 36-9, at 3-4).  The letter continues to explain that Ms. Mundy "rejected this LCA condition because she says she does not have a drug or alcohol problem, just chronic asthma and a concern about cigarette smoke at work."  (ECF No. 36-9, at 4).  Ms. Mundy refused to sign the Last Chance Agreement, and Mr. Gable terminated her employment with the City on August 10, 2020.  (ECF No. 36-9, at 4).  The letter further describes that on August 28, 2020, Assistant Department of Public Works Director, Marcelle Newman, denied Ms. Mundy's grievance at Step II after offering Ms. Mundy the same Last Chance Agreement Terms for her to return to work.  (ECF No. 36-9, at 4).  The letter further describes that Ms. Mundy, the City, and the Union had a Step III phone conference, wherein Ms. Mundy indicated that she would consider signing the Last Chance Agreement.  (ECF No. 36-9, at 4).  The exhibits attached to the Second Amended Complaint support that, pursuant to subsequent negotiations between the City, Union, and Ms. Mundy, Ms. Mundy agreed upon

acceptable terms for a Last Chance Agreement.  (ECF No. 36-13, at 2).  The Last Chance

Agreement included a provision that if Ms. Mundy tested positive for marijuana, she would be

immediately terminated.[2]  (*See* ECF Nos. 36-9, at 3-4; 36-13, at 2). Following execution of the

Last Chance Agreement, Ms. Mundy was reinstated and returned to work.  (*See* ECF No. 36-13,

at 2).

   After signing the Last Chance Agreement and returning to work, Ms. Mundy later tested

positive for marijuana, whereupon the City terminated her employment on November 5, 2020.

(ECF No. 36-13, at 2).  A second letter, dated November 5, 2020, from Mr. Gable to Ms. Mundy

was attached to Ms. Mundy's Second Amended Complaint.  (ECF No. 36-13, at 2).  This letter

explained that Ms. Mundy was suspended without pay for five workdays, from October 29, 2020

through November 4, 2020.  (ECF No. 36-13, at 2).  The letter continued to explain that Ms.

Mundy had until the end of business on November 4, 2020 to "satisfactorily respond to these

charges or be discharged."  (ECF No. 36-13, at 2).  The letter further explained that, rather than

responding to Mr. Gable, as was required by the City's notice, Ms. Mundy responded to her

Union Representative.  (ECF No. 36-13, at 2).  Nevertheless, the letter stated that, even if Ms.

Mundy had followed the proper procedures and responded to Mr. Gable rather than to her Union

Representative, she still would have been discharged from her employment with the City because

she tested positive for marijuana, which was prohibited by the Last Chance Agreement.  (ECF

No. 36-13, at 2).  The letter explained that Ms. Mundy was discharged from employment with

the City as of November 5, 2020, in accordance with the marijuana provision within her Last

Chance Agreement.  (ECF No. 36-3, at 2).

---

[2] The Court notes that, while Ms. Mundy attached a letter describing the terms of the Last
Chance Agreement to her Second Amended Complaint, she did not attach a final version of the
Last Chance Agreement.  (*See* ECF Nos. 36-9, at 3-4; 36-13, at 2).

## II.    Standard of Review

When reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Eid v. Thompson*, 740 F.3d 118, 122 (3d Cir. 2014) (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The Supreme Court clarified that this plausibility standard should not be conflated with a higher probability standard.  *Iqbal*, 556 U.S. at 678.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556); *see also Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 147 (3d Cir. 2014).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.  "Factual allegations of a complaint must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

A pleading party need not establish the elements of a *prima facie* case at this stage; the party must only "put forth allegations that 'raise a reasonable expectation that discovery will reveal evidence of the necessary element[s].'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009) (quoting *Graff v. Subbiah Cardiology Assocs., Ltd.*, 2008 WL 2312671 (W.D. Pa. June 4, 2008)); *see also Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 790 (3d Cir. 2016). Nonetheless, a court need not credit bald assertions, unwarranted inferences, or legal conclusions

cast in the form of factual averments. *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 n.8 (3d Cir. 1997). The primary question in deciding a motion to dismiss is not whether the plaintiff will ultimately prevail, but rather whether he or she is entitled to offer evidence to establish the facts alleged in the complaint. *Maio v. Aetna*, 221 F.3d 472, 482 (3d Cir. 2000). The purpose of a motion to dismiss is to "streamline[] litigation by dispensing with needless discovery and factfinding." *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989).

Furthermore, "in evaluating a motion to dismiss, courts are not limited to the complaint, but may also consider evidence integral to or explicitly relied upon therein." *Tanksley v. Daniels*, 902 F.3d 165, 172 (3d Cir. 2018) (internal quotations omitted). "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citation omitted).

When a court grants a motion to dismiss, the court "must permit a curative amendment unless such an amendment would be inequitable or futile." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 174 (3d Cir. 2010) (internal quotations omitted). Further, amendment is inequitable where there is "undue delay, bad faith, dilatory motive, [or] unfair prejudice." *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). Amendment is futile "where an amended complaint 'would fail to state a claim upon which relief could be granted.'" *M.U. v. Downingtown High Sch. E.*, 103 F. Supp. 3d 612, 631 (E.D. Pa. 2015) (quoting *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 175 (3d Cir. 2010)). In a civil rights case, when the court grants a motion to dismiss for a failure to state a claim, the court must offer the plaintiff leave to amend, even if it was not requested by the

plaintiff, "unless doing so would be inequitable or futile." *Phillips*, 515 F.3d at 246; *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007).

### III.    Discussion

As an initial matter, while courts have an obligation to read a pro se litigant's pleading liberally, a pro se plaintiff is not excused from complying with rules of procedural and substantive law. *See Holley v. Dep't of Veteran Affairs*, 165 F.3d 244, 247-48 (3d Cir. 1999) (citing *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)).  Although courts are directed to "liberally construe pro se filings," the plaintiff "is not exempt from procedural rules or the consequences of failing to comply with them." *Jones v. Sec'y Pa. Dep't of Corr.*, 589 F. App'x 591, 593 (3d Cir. 2014).  "Courts are more forgiving of pro se litigants for filing relatively unorganized or somewhat lengthy complaints." *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir. 2019), *cert. denied*, 140 S. Ct. 1611 (2020) (citing 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1217 (3d ed. 2019).  The Third Circuit has explained:

> The circumstances surrounding the particular pleading, including the nature of the action, the sort of relief being sought, the availability of information, and other practical considerations must guide the inquiry into whether the litigant's statement of his claim qualifies as "short and plain."

*See* Wright & Miller, *supra*, § 1217.  Importantly, "judging the sufficiency of a pleading is a context-dependent exercise." *W. Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 98 (3d Cir. 2010).  *Id.* at 93.  Furthermore, a "statement of a claim may be 'plain' even if it does not include every name, date, and location of the incidents at issue." *Id.* (citations omitted).

As regards all claims, in response to each Defense argument in support of its Motion to Dismiss, Ms. Mundy argues that she is a pro se plaintiff and that she has satisfied the pleading requirements for each element of her respective claims.  (ECF No. 44, at 7, 8, 9, 10, 11-15).

### A.  ADA and Rehabilitation Act Disability Discrimination Claims

Ms. Mundy's Second Amended Complaint asserts claims for ADA and Rehabilitation

Act Disability Discrimination.  The City argues that Ms. Mundy did not allege sufficient facts

regarding her ADA and Rehabilitation Act Disability Discrimination claims.  (ECF No. 42, at 9).

Courts apply the same legal standard for ADA and Rehabilitation Act disability discrimination

claims.  *Fromm v. MVM, Inc.*, 371 F. App'x 263, 269 (3d Cir. 2010).  Under the ADA, "[n]o

covered entity shall discriminate against a qualified individual on the basis of disability in regard

to job application procedures, the hiring, advancement, or discharge of employees, employee

compensation, job training, and other terms, conditions, and privileges of employment."  41

U.S.C. § 12112(a).  In order to establish a prima facie case of disability discrimination, a plaintiff

must show that "(1) he is a disabled person within the meaning of the ADA; (2) he is otherwise

qualified to perform the essential functions of the job; and (3) he has suffered an otherwise

adverse employment decision as a result of discrimination."  *Gaul v. Lucent Techs.*, 134 F.3d

576, 580 (3d Cir. 1998).

Turning to the first element, a disability is defined under the ADA as "(A) a physical or

mental impairment that substantially limits one or more major life activities of such individual;

(B) a record of such an impairment; or (C) being regarded as having such an impairment."  42

U.S.C. § 12102(1).  The ADA specifies that "major life activities include, but are not limited to,

caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing,

lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating,

and working."  42 U.S.C. § 12102(2)(A).  "An individual is substantially limited in performing a

major life activity if that individual is unable to pursue that major life activity in a comparable

9

manner 'to most people in the general population.'" *Arrington v. Nat'l R.R. Passenger Corp.*, 721 F. App'x 151, 154 (3d Cir. 2018) (quoting 29 C.F.R. § 1630.2(j)(1)(ii)).

Under the second element, a "qualified individual" is a person who, "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). EEOC Regulations divide the "qualified individual" inquiry into two prongs. *Deane v. Pocono Med. Ctr.*, 142 F.3d 138, 145 (3d Cir. 19998). "First, a court must determine whether the individual satisfies the requisite skill, experience, education and other job-related requirements of the employment position that such individual holds or desires." *Id.* (citing 29 C.F.R. § 1630, app. § 1630.2(m)). "Second, it must determine whether the individual, with or without reasonable accommodation, can perform the essential functions of the position held or sought." *Id.* (citing 29 C.F.R. § 1630, app. § 1630.2(m)).

The Third Circuit Court of Appeals follows a two-step process to determine whether the individual can perform the essential functions of the job with or without a reasonable accommodation. *Id.* at 146. "First, a court must consider whether the individual can perform the essential functions of the job without accommodation. If so, the individual is qualified (and, *a fortiori*, is not entitled to accommodation)." *Id.* If the individual cannot perform the essential functions of the job without accommodation, "then the court must look to whether the individual can perform the essential functions of the job with a reasonable accommodation. If so, the individual is qualified. If not, the individual has failed to set out a necessary element of the *prima facie* case." *Id.*

A job's essential functions are defined by EEOC Regulations as those that are "fundamental" to the job rather than "marginal." *Skerski v. Time Warner Cable Co.*, 257 F.3d

273, 278 (3d Cir. 2001) (citing 29 C.F.R. § 1630.2(n)(1)). Per the applicable Regulations, "a job function may be considered essential" for any of the following reasons: "(i) The function may be essential because the reason the position exists is to perform that function; (ii) The function may be essential because of the limited number of employees available among whom the performance of that job function can be distributed; and/or (iii) The function may be highly specialized so that the incumbent in the position is hired for his or her expertise or ability to perform the particular function." 29 C.F.R. § 1630.2(n)(2). The Regulations also include a list of evidence that a Court may consider in determining whether a particular function is essential:

(i)     The employer's judgment as to which functions are essential;

(ii)    Written job descriptions prepared before advertising or interviewing applicants for the job;

(iii)   The amount of time spent on the job performing the function;

(iv)   The consequences of not requiring the incumbent to perform the function;

(v)    The terms of a collective bargaining agreement;

(vi)   The work experience of past incumbents in the job; and/or

(vii)  The current work experience of incumbents in similar jobs.

29 C.F.R. § 1630.2(n)(3). Whether a particular function of a job is essential is "a factual determination that must be made on a case by case basis." *Skerski*, 257 F.3d at 278 (quoting 29 C.F.R. § 1630, app. § 1630.2(n)).

A reasonable accommodation under the ADA includes: "job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities." 42 U.S.C. § 12111(9)(B). EEOC

Regulations define a reasonable accommodation as "modifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable a qualified individual with a disability to perform the essential functions of that position."  29 C.F.R. § 1630.2(o)(1)(ii).

As to the third element of a plaintiff's prima facie case, an adverse employment action is "an action by an employer that is serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." *Komis v. Sec'y of the U.S. Dep't of Labor*, 918 F.3d 289, 292 (3d Cir. 2019) (internal quotations omitted).  Adverse employment actions include acts related to the "hiring, advancement, or discharge of employees." 42 U.S.C. § 12112(a).

If the plaintiff establishes the prima facie case, "the burden of production then shifts to the employer to articulate some legitimate, nondiscriminatory reason" for the adverse employment decision. *Olson v. GE Astrospace*, 101 F.3d 947, 951 (3d Cir. 1996) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).  Once the employer has done so, the burden then shifts back to the plaintiff, who "must show by a preponderance of the evidence that the employer's proffered explanation was pretextual." *Id.*

The Court has identified two sets of Disability Discrimination claims within Ms. Mundy's pro se Second Amended Complaint.  Her first set of Disability Discrimination claims relate to her asthma condition, and her second set of Disability Discrimination claims relate to her anxiety condition.  The Court will analyze each set of Disability Discrimination claims in turn.

The Court will first consider Ms. Mundy's Disability Discrimination claims as related to her asthma condition.  Under the first element of Ms. Mundy's prima facie case, Ms. Mundy

must demonstrate that she is a disabled person within the meaning of the ADA.  Ms. Mundy's asthma condition could be considered a physical impairment that impacts her respiratory system. The alleged major life activity that is impaired by Ms. Mundy's asthma condition is her ability to breathe.  Other cases that have considered whether asthma constitutes a disability under the ADA have found that such a plaintiff could qualify as a disabled individual where the condition severely impairs "an individual's respiratory capacity as compared to an average person in the general population." *Adams v. Commonwealth of Penn.*, 1:06-CV-2154, 2009 WL 2707601, at *5 (M.D. Pa. Aug. 25, 2009); *see also Davis v. Davis Auto, Inc.*, 10-CV-03105, 2011 WL 5902220, at *6 (E.D. Pa. Nov. 22, 2011).  "While there is no bright line rule for when the plaintiff's ability to breathe is more severely impaired than the average person, ADA protections are not usually triggered unless the ailments are so debilitating that they limit the ability to hold a conversation or move about freely even when the plaintiff takes available, mitigating medications." *Id.* (citing *Gallagher v. Sunrise Assisted Living of Haverford*, 268 F.Supp.2d 436, 441 (E.D. Pa. 2003)).  Third Circuit courts have allowed plaintiffs to surmount summary judgment where they have been able to demonstrate that they suffer from a long-term breathing disorder that requires "continued vigilance to prevent debilitating attacks." *Adams*, 2009 WL 2707601, at *6.  In contrast, "[i]ntermittent breathing problems or those that are well-controlled with medication generally do not constitute an impairment under the ADA." *Id.*  Ms. Mundy attaches various doctor's notes and medication lists to her Second Amended Complaint detailing the severity of her asthma condition, the medications that she takes to control her condition, and the symptoms that she experiences during a flare-up.  As a pro se plaintiff, and for the purposes of the present Motion to Dismiss, Ms. Mundy sufficiently pleads that her asthma condition qualifies her as a disabled person to satisfy the first element of her prima facie case.

Under the second element of the prima facie case, Ms. Mundy must sufficiently plead that she is a qualified individual who can perform the essential functions of the job with or without a reasonable accommodation.  Ms. Mundy pleads that she was able to meet the job-related requirements of the job and perform the essential functions of the job if the City would have provided a reasonable accommodation of enforcing its no smoking policy.  Ms. Mundy also pleads that the City should have accommodated her asthma condition by giving her additional time to return to work upon the expiration of her PTO and FMLA leave.  At this stage, she has met the pleading standard to satisfy that she is qualified.

Finally, under the third element of the prima facie case, Ms. Mundy must plead that she suffered an adverse employment action as a result of unlawful disability discrimination for her asthma condition.  Ms. Mundy alleges that she was suspended, terminated, and forced to sign a Last Chance Agreement as a result of her asthma condition.  She pleads that she missed work due to her asthma because of smoking at the workplace and had to use all of her FMLA and PTO time, which eventually led to her termination.  At this stage, her pleading sufficiently connects her asthma condition to her termination.  Ms. Mundy has identified a causal connection between her suspension, termination, and the mandate that she sign a Last Chance Agreement sufficient to show that the City took such actions out of a discriminatory animus.  As such, the City's Motion to Dismiss Ms. Mundy's asthma related ADA and Rehabilitation Act Disability Discrimination claim is denied.

As regards Ms. Mundy's ADA and Rehabilitation Act Disability Discrimination claims related to her anxiety condition, Ms. Mundy must demonstrate that she is a disabled person within the meaning of the ADA.  Anxiety conditions can be considered mental impairments under the ADA.  Here, the Second Amended Complaint does not contain adequate details

14

regarding Ms. Mundy's anxiety condition to survive the present Motion to Dismiss.  Although Ms. Mundy attaches two doctor's notes that state she has anxiety, the doctor's notes do not describe how Ms. Mundy's anxiety condition impairs her major life activities as compared to most people in the general population.  Furthermore, Ms. Mundy's Second Amended Complaint does not specify the major life activities that were impacted by said anxiety condition.  She does not allege details or information regarding her diagnoses, associated medications, or her symptoms or limitations related to said condition.  As such, Ms. Mundy did not sufficiently plead facts to satisfy the disability element of her prima facie Disability Discrimination claims with regard to her anxiety condition.  As such, the City's Motion to Dismiss Ms. Mundy's anxiety related ADA and Rehabilitation Act Disability Discrimination claim will be granted.

Further, under the second element, Ms. Mundy must plead that she is a qualified individual who can perform the essential functions of the job with or without a reasonable accommodation.  As discussed above, Ms. Mundy has met her pleading standard of showing that she is a qualified individual who can perform the essential functions of the job with or without a reasonable accommodation.

Finally, for the third element, Ms. Mundy must plead that she suffered an adverse employment action as a result of discrimination for her anxiety condition.  Ms. Mundy pleads conclusory allegations that she was suspended, terminated, and forced to sign a Last Chance Agreement as a result of her anxiety condition.  Ms. Mundy has not pled sufficient facts to establish a discriminatory animus in response to her anxiety condition.  As such, Ms. Mundy has not sufficiently pleaded a causal link for her anxiety related ADA and Rehabilitation Act Disability Discrimination claim.  The City's Motion to Dismiss will be granted as to Ms. Mundy's anxiety related ADA and Rehabilitation Act Disability Discrimination claims.

In that Ms. Mundy filed her Second Amended Complaint pro se, and as the Court cannot say that further amendment would be inequitable or futile, Ms. Mundy will be afforded leave to amend should she have more factual detail to support her anxiety related ADA and Rehabilitation Act Disability Discrimination claims.

### B.  ADA and Rehabilitation Act Failure to Accommodate Claims

As regard her asthma condition, Ms. Mundy's Second Amended Complaint alleges that she requested accommodation that the City enforce its no smoking policy and that the City give her additional time off.  The City argues that Ms. Mundy did not allege sufficient facts regarding any ADA or Rehabilitation Act Failure to Accommodate claims within her Second Amended Complaint.  (ECF No. 42, at 13-14).  The ADA's prohibition against discrimination includes "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilitates, privileges, advantages, or accommodations to individuals with disabilities."  42 U.S.C. § 12182(b)(2)(A)(ii).  Once a qualified individual with a disability has requested an accommodation, the employer has a good faith duty to engage in the "interactive process" with the employee to determine whether the employee has a disability and whether a reasonable accommodation exists. *Williams v. Phil. Hous. Auth. Police Dep't*, 380 F.3d 751, 772 (3d Cir. 2004).  To support a claim for a failure to accommodate under the ADA, a plaintiff must establish: "(1) he was disabled and his employer knew it; (2) he requested an accommodation or assistance; (3) his employer did not make a good faith effort to assist; and (4) he could have been reasonably accommodated." *Capps v. Mondelez Global, LLC*, 847 F.3d 144, 157 (3d Cir. 2017).

The Court identifies two sets of Failure to Accommodate claims within Ms. Mundy's pro se Second Amended Complaint.  Like her ADA and Rehabilitation Act Disability Discrimination

claims discussed above, Ms. Mundy asserts her Failure to Accommodate claims related to her asthma and anxiety.  The Court will analyze each set of Ms. Mundy's Failure to Accommodate claims in turn.

In order to establish a Failure to Accommodate claim, Ms. Mundy must first demonstrate that she is disabled and her employer knew it.  Similar to an ADA Disability Discrimination claim, an ADA Failure to Accommodate claim also requires the employee to be a qualified individual with a disability.  As discussed above, in relation to her asthma condition, Ms. Mundy has sufficiently pleaded she had a disability and that her employer knew it.

Turning to the second element, Ms. Mundy must demonstrate that she requested an accommodation or assistance from the City.  Ms. Mundy attaches various doctor's notes in support of her accommodation requests.  Ms. Mundy also attaches an April 1, 2020 email correspondence from the human resources manager that describes that Ms. Mundy discussed her concerns about her co-workers smoking indoors and within work vehicles.  (ECF No. 36-4, at 2). In addition, Ms. Mundy also attaches a September 1, 2020 letter that she sent to Ms. Newman, wherein Ms. Mundy detailed that she was ready and able to return to work, provided the City addressed her concerns about smoking indoors and within work vehicles.  (ECF No. 36-12, at 2). Ms. Mundy's letter explains that being exposed to second-hand smoke aggravates her asthma condition.  Ms. Mundy also requested that the City delay the date that she return to work at the expiration of her PTO and FMLA leave.  As a pro se plaintiff, and for the purposes of the present Motion to Dismiss, Ms. Mundy sufficiently pleads that she requested an accommodation to meet the second element of the *Capps* test.

Third, Ms. Mundy must plead that the City did not make a good faith effort to assist her asthma conditions.  Ms. Mundy alleges that the City advised her to "take the matter into my own

hands and approach the employees who violated a city ordinance not to smoke." (ECF No. 36-12, at 2).  At this stage, such allegation sufficiently satisfies the pleading standard for the third element of the *Capps* test for her asthma condition.

Finally, Ms. Mundy's Second Amended Complaint must demonstrate that she could have been easily accommodated.  Ms. Mundy alleges that the City could have easily accommodated her by enforcing the City's no smoking policy.  Ms. Mundy argues that Mr. Gable could have easily sent an email to the supervisors and managers asking them to enforce the City's no smoking policy, but he did not.  In contrast, Ms. Mundy's Second Amended Complaint contains an attached email from Mr. Gable to Supervisors/Managers that asks the supervisors and managers to enforce the City's COVID-19 social distancing and masking policy.  (ECF No. 36-6, at 2).  As such, Ms. Mundy's Second Amended Complaint sufficiently alleges that the City could have easily accommodated her asthma disability by enforcing its no smoking policy.  As a pro se plaintiff, and for the purposes of the present Motion to Dismiss, Ms. Mundy sufficiently pleads the fourth element of the *Capps* test for her asthma condition.  The City's Motion to Dismiss will be denied with regard to Ms. Mundy's asthma related ADA and Rehabilitation Act Failure to Accommodate claims.

The Court will next consider Ms. Mundy's anxiety related ADA and Rehabilitation Act Failure to Accommodate claims.  Ms. Mundy's Second Amended Complaint alleges that she requested accommodation for her anxiety condition.  In order to establish a Failure to Accommodate claim, Ms. Mundy must demonstrate that she is a qualified individual with a disability.  As discussed above, Ms. Mundy has not pled sufficient facts to show that her anxiety condition is considered to be a disability under the ADA.  Thus, Ms. Mundy's Second Amended

Complaint cannot satisfy the initial requirement for a Failure to Accommodate claim for her anxiety condition.

Turning to the second element, Ms. Mundy's Second Amended Complaint must demonstrate that she requested an accommodation or assistance from the City. Ms. Mundy attaches various doctor's notes in support of her accommodation claim. However, while two of the doctor's notes briefly mention that Ms. Mundy has anxiety, Ms. Mundy's doctor provides no further information about her anxiety condition. Other than these two doctor's notes, the Second Amended Complaint alleges no facts regarding the details of any alleged accommodation request for her anxiety condition. The Second Amended Complaint therefore does not sufficiently allege facts to satisfy her pleading standard for her anxiety related Failure to Accommodate claims at the second step of the *Capps* test.

As Ms. Mundy's Failure to Accommodate claims for her anxiety condition fail at the initial steps of the *Capps* test, the Court will not analyze the third and fourth elements. The City's Motion to Dismiss will be granted as to Ms. Mundy's anxiety related ADA and Rehabilitation Act Failure to Accommodate claims.

In that Ms. Mundy filed her Second Amended Complaint pro se, and as the Court cannot say that amendment would be inequitable or futile, Ms. Mundy will be afforded leave to amend should she have more factual detail to support her anxiety related ADA and Rehabilitation Act Failure to Accommodate claims.

### C. ADA and Rehabilitation Act Retaliation Claims

Ms. Mundy's Second Amended Complaint asserts claims for ADA and Rehabilitation Act Retaliation. The City argues that Ms. Mundy did not allege sufficient facts regarding these claims. (ECF No. 42, at 12-13). The ADA prohibits discrimination "against any individual

because such individual has opposed any act or practice made unlawful by this chapter or

because such individual made a charge, testified, assisted, or participated in any manner in an

investigation, proceeding, or hearing under this chapter."  42 U.S.C. § 12203(a).  The elements to

prove an ADA retaliation claim are: (1) the plaintiff engaged in protected conduct; (2) the

plaintiff suffered an adverse employment action by the defendant; and (3) there is a causal

relationship between them.  *Williams*, 380 F.3d at 759.  Even where a plaintiff has not pled

sufficient facts to constitute a disability under the ADA, "the ADA retaliation provision protects

'any individual' who has opposed any act or practice made unlawful by the ADA or who has

made a charge under the ADA."  *Krouse v. American Sterilizer Co.*, 126 F.3d 494, 502 (3d Cir.

1997).  Thus, "[a]n individual who is adjudged not to be a 'qualified individual with a disability'

may still pursue a retaliation claim under the ADA."  *Id.*

First, Ms. Mundy must show that she engaged in protected conduct under the ADA.

Relevant here, an alleged request for an accommodation could qualify as protected conduct if the

plaintiff had a reasonable, good faith belief that the requested accommodation was necessary and

appropriate.  *Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 191 (3d Cir. 2003).  As

discussed above, Ms. Mundy attaches various doctor's notes dated November 20, 2019, October

15, 2020, and July 10, 2020 in support of her accommodation requests.  Ms. Mundy also attaches

an April 1, 2020 email correspondence from her human resources manager, wherein the manager

references a conversation during which Ms. Mundy discussed her concerns about her co-workers

smoking indoors and within work vehicles.[3]  (ECF No. 36-4, at 2).  In addition, Ms. Mundy also

attaches a September 1, 2020 letter that she sent to Ms. Newman advising that she is ready and

---

[3] While this email correspondence does suggest that Ms. Mundy brought up her concerns about
smoking indoors and within work vehicles, it is not clear from this email correspondence that
Ms. Mundy related this request to her asthma condition.  (ECF No. 36-4, at 2).

able to return to work, provided the City address her concerns about smoking indoors and within work vehicles.  (ECF No. 36-12, at 2).  Ms. Mundy explains in this letter that smoking aggravates her asthma condition.  As a pro se plaintiff, and for the purposes of the present Motion to Dismiss, Ms. Mundy satisfies the pleading standard for the first element of her Retaliation claims.

Second, Ms. Mundy must show that the City took adverse employment action against her. Ms. Mundy claims that her July 9, 2020 suspension, the negotiation process involving the Last Chance Agreement, her August 10, 2020 termination, and her November 5, 2020 termination were adverse employment actions that occurred as a result of her engaging in protected activities of requesting accommodation.  Being suspended from work, signing a Last Chance Agreement, and eventual termination from work can constitute adverse employment consequences for the purposes of an ADA Retaliation claim.  As such, and for the purposes of the present Motion to Dismiss, Ms. Mundy sufficiently pleads the adverse employment action prong of her prima facie Retaliation claims.

Finally, Ms. Mundy must show that there is a causal link between her protected conduct and the alleged adverse employment actions taken against her.  To show the existence of a causal link, a plaintiff must plead facts showing "an unusually suggestive temporal proximity" or "a pattern of antagonism coupled with timing to establish a causal link."  *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007).  Ms. Mundy made her first accommodation request via a November 20, 2019 doctor's note.  Ms. Mundy continued to make accommodation requests until she was finally terminated in November 2020.  When Ms. Mundy failed to return to work on July 9, 2020, she sent a doctor's note on July 10, 2020 to support her request to delay her return to work date.  Ms. Mundy was suspended from work on July 9, 2020, after she did not

return to work upon the expiration of her PTO and FMLA leave.  The timing of Ms. Mundy's accommodation request and her suspension from work suggest a casual connection sufficient to suggest a causal link between her protected conduct and the alleged adverse employment actions taken against her.  The City's Motion to Dismiss will be denied as to Ms. Mundy's ADA and Rehabilitation Act Retaliation claims.

### D.  Title VII Gender Discrimination Claim

Ms. Mundy claims that she was discriminated against because of her gender.  The City argues that Ms. Mundy's Title VII Gender Discrimination claim must fail because she has not identified a similarly situated employee in support of her gender discrimination claim.  (ECF No. 45, at 1-2).  Title VII prohibits an employer from discriminating against its employees on the basis of sex.  42 U.S.C. § 2000e-2(a)(i).  Gender discrimination claims are analyzed under the *McDonnell Douglas* burden-shifting framework.  411 U.S. 792 (1973).

Initially, Ms. Mundy must establish a prima facie case of gender discrimination.  A plaintiff can establish a prima facie gender discrimination case by showing: (1) she is a member of a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) this occurred under circumstances that raise an inference of discriminatory action.  *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 797 (3d Cir. 2003).

First, Ms. Mundy, a female, is a member of a protected class.  Second, as discussed above, Ms. Mundy has sufficiently pled that she is qualified for her position with the City.  Third, as discussed above, being suspended from work, having to sign a Last Chance Agreement, and eventual termination from work can constitute adverse employment actions.  As such, Ms. Mundy satisfies the first three elements of her prima facie Gender Discrimination claim.

Finally, under the fourth element, Ms. Mundy must plead that the alleged adverse employment action occurred under circumstances that raise an inference of gender discrimination.  In support of her Gender Discrimination claim, Ms. Mundy's identifies a male colleague, Mallory Craig, whom she alleges was treated more favorably than she was and that such favorable treatment occurred as a result of impermissible gender discrimination.  (ECF No. 36, ¶¶ 69-73).  "While 'similarly situated' does not mean identically situated, the plaintiff must nevertheless be similar in all relevant respects." *Opsatnik v. Norfolk Southern Corp.*, 335 Fed. App'x 220, 223 (3d Cir. 2009) (citation and internal quotations omitted).  With regard to workplace discipline, the relevant factors to consider in determining whether individuals are "similarly situated" may include a "showing that the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish the conduct or their employer's treatment of them." *McCullers v. Napolitano*, 427 Fed. App'x 190, 195 (3d Cir. 2011).

The Second Amended Complaint and the attached exhibits demonstrate that the identified male colleague presented different employment circumstances, which explain the difference in treatment.  Ms. Mundy stated within her Second Amended Complaint that she had used all of her FMLA and PTO days.  (ECF No. 36, ¶ 25).  Ms. Mundy attached a July 8, 2020 email from Megan Yarish that explains that Mr. Craig had additional PTO days remaining and that the City would deduct his PTO time for any days that he did not report to work.  (ECF No. 36-8, at 2).  She alleges that Mr. Craig and herself both suffer from severe asthma and that Mr. Craig was off of work from June 8, 2020 until July 8, 2020.  (ECF No. 36, ¶ 70).  Finally, she alleges that Mr. Craig was due to return to work in May 2020, but the City allowed him to use his PTO time before requiring him to return to work.  (ECF No. 36, ¶ 71).  At this stage, even as a pro se

plaintiff, Ms. Mundy has not pled sufficient facts regarding her Title VII Gender Discrimination claim.  As such, the City's Motion Dismiss will be granted.

In that Ms. Mundy filed her Second Amended Complaint pro se, and as the Court cannot say that amendment would be inequitable or futile, Ms. Mundy will be afforded leave to amend should she have more factual detail to support her Title VII Gender Discrimination claim.

### E.  Section 1981 Retaliation Claim

Ms. Mundy presents a claim for § 1981 Retaliation in relation to protected activity concerning racial discrimination.  The City of Pittsburgh argues that Ms. Mundy's Second Amended Complaint does not contain any sufficient allegations of racial discrimination, as required under § 1981.  (ECF No. 42, at 17-18).

Claims brought under § 1981 require a charge of discrimination based upon race.  To establish a prima facie case of retaliation under § 1981, a plaintiff must show that "(1) he engaged in protected activity, (2) his employer took an adverse employment action against him, and (3) there was a causal connection between his participation in the protected activity and the adverse employment action."  *Estate of Oliva ex rel. McHugh v. New Jersey*, 604 F.3d 788, 798 (3d Cir. 2010) (citation omitted).

Ms. Mundy's Second Amended Complaint contains no allegations of any protected activity related to race.  Thus, she fails to plead sufficient facts to meet the first element for a § 1981 Retaliation claim.  As such, the City's Motion to Dismiss will be granted as to Ms. Mundy's § 1981 Retaliation claim.

Because the Court previously dismissed Ms. Mundy's § 1981 Retaliation claim in response to the City's Motion to Dismiss her original Complaint, and as Ms. Mundy has provided no additional factual detail in her Second Amended Complaint in support of said claim,

granting any further leave to amend would be inequitable.  As such, no further leave to amend

will be granted.

### F.  Procedural Due Process Claims

The City argues that Ms. Mundy was afforded due process regarding her absenteeism,

which eventually resulted in her being returned to work.  (ECF No. 42, at 14).  The Fourteenth

Amendment provides that no person shall be deprived "of life, liberty, or property, without due

process of law."  *Stelle v. Cicchi*, 855 F.3d 494, 501 (3d Cir. 2017).  "The Fourteenth

Amendment places procedural constraints on the actions of government that work a deprivation

of interests enjoying the stature of 'property' within the meaning of the Due Process Clause."

*Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 9 (1978).  "In constitutional parlance, the

claimant must have a legitimate claim of an entitlement" such that "a claimant must show an

entitlement to a property interest created by a state statute or regulation or arising from

government policy or a mutually explicit understanding."  *Carter v. City of Phila.*, 989 F.2d 117,

120 (3d Cir. 1993).  The procedural aspect of the Due Process Clause guarantees the availability

of certain procedural mechanisms, typically the right to notice and a hearing before the

government can deprive an individual of life, liberty, or a property interest.  *Washington v.*

*Lehigh Cty. Dist. Attorney's Off.*, 21-159, 2021 WL 2108985, at *6 (E.D. Pa. May 25, 2021).  In

order to establish a claim for a violation of procedural due process, a plaintiff "must establish

both a deprivation of an individual interest that is encompassed within the Fourteenth

Amendment's protection of life, liberty, or property" and the absence of procedures that "provide

due process of law."  *In re Energy Future Holdings Corp.*, 949 F.3d 806, 822 (3d Cir. 2020).

The Second Amended Complaint alleges that Ms. Mundy was terminated from her

position with the City twice.  First, she was terminated on August 10, 2020 after she did not

return to work upon the expiration of her FMLA leave on July 9, 2020. Second, she was terminated on November 5, 2020 after she tested positive for marijuana. As such, the Court will examine Ms. Mundy's Procedural Due Process claims for each termination separately.

Government employees' property interests in their jobs are protected by the Due Process Clause of the Constitution. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985). *Loudermill* requires that a public employee with a property interest in his or her employment "is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Id.* "All the process that is due is provided by a predetermination opportunity to respond, coupled with post-termination administrative procedures." *Id.* at 547-48. Ms. Mundy, as a government employee, was entitled to these due process rights. Ms. Mundy's Second Amended Complaint does not plead the absence of procedures concerning due process. She alleges that she was often absent from work due to her asthma issues. By July 9, 2020, she had used up the entirety of her PTO and FMLA time, and the City expected her to return to work. When she failed to report to work by July 9, 2020, she was suspended for five days pending termination. After her July 10, 2020 suspension pending termination, Ms. Mundy was notified of the reasons for her termination; she and her union representative were afforded opportunity to be heard; and she actively participated in proceedings leading to her return to work. Ms. Mundy had the chance to return to work on August 4, 2020, subject to a number of probationary conditions, including that she sign a Last Chance Agreement. Specifically, Ms. Mundy rejected the Last Chance Agreement because it provided that if she tested positive for marijuana she would face immediate five-day suspension pending termination. Ms. Mundy refused to sign the Last Chance Agreement, and the City terminated her employment on August 10, 2020. Thereafter, on August 28, 2020, Ms. Mundy's

grievance was denied at Step II after the City again offered to reinstate her employment, provided she signed the Last Chance Agreement. At the Step III phone conference between Ms. Mundy, the City and her Union, Ms. Mundy indicated that she would consider signing the Last Chance Agreement. Following further negotiation between Ms. Mundy, the City and her Union, Ms. Mundy signed the Last Chance Agreement, which included the marijuana testing provision. These allegations from her Second Amended Complaint demonstrate that Ms. Mundy was afforded procedural due process by the City. As such, the City did not deprive Ms. Mundy of her procedural due process rights with regard to her August 10, 2020 termination. The City's Motion to Dismiss Ms. Mundy's Procedural Due Process claim, with regard to her August 2020 termination, will be granted.

Because the Court previously dismissed Ms. Mundy's Procedural Due Process claim with regard to her August 2020 termination in response to the City's Motion to Dismiss her original Complaint, and as Ms. Mundy has provided no additional factual detail in her Second Amended Complaint in support of said claim, granting any further leave to amend would be inequitable. As such, no further leave to amend will be granted.

Turning to the November 5, 2020 termination, Ms. Mundy has likewise not met her pleading requirement to establish that her procedural due process rights were violated. Employers use Last Chance Agreements to put an employee on notice that, if the employee fails to comply with the provisions of the Agreement, his or her employment will be terminated. *United Steelworkers of Am., ALF-CIO-CLC United Steelworkers of Am., Local Union No. 1165 v. Lukens Steel Co., Div. of Lukens, Inc.*, 969 F.2d 1468, 1476-78 (3d Cir. 1992). The exhibits attached to Ms. Mundy's Second Amended Complaint support the City's claim that Ms. Mundy actively participated in the negotiations regarding the terms and provisions of the Last Chance

Agreement.  After returning to work, Ms. Mundy ultimately tested positive for marijuana, which thereby violated the agreed-upon condition and effected her suspension and termination.  Such condition and consequence were expressly set forth within the Last Chance Agreement.  Further, the exhibits attached to the Second Amended Complaint support that Ms. Mundy received notice of the reason for the City's action to suspend her and for her eventual termination.  She also was given an opportunity to respond to the City's notice.  As detailed within Mr. Gable's November 5, 2020 letter, Ms. Mundy did not respond directly to him; instead, she sent a response to her Union Representative.  As detailed within the letter, even if Ms. Mundy had responded directly to Mr. Gable rather than to her Union Representative, her response would still have been unsatisfactory, because she tested positive for marijuana, which was prohibited by the Last Chance Agreement.  Accordingly, she has not met her burden of showing that she was deprived of her procedural due process rights with regard to her November 2020 termination.

Because the Court previously dismissed Ms. Mundy's Procedural Due Process claim with regard to her November 2020 termination in response to the City's Motion to Dismiss her original Complaint, and as Ms. Mundy has provided no additional factual detail in her Second Amended Complaint in support of said claim, granting any further leave to amend would be inequitable.  As such, no further leave to amend will be granted.

## IV.    Conclusion

For the reasons stated above, the City of Pittsburgh's Motion to Dismiss will be denied in part and granted in part.

The City's Motion to Dismiss will be denied as to:

- The Second Amended Complaint's asthma related ADA and
  Rehabilitation Act Disability Discrimination claims;

- The Second Amended Complaint's asthma related ADA and Rehabilitation Act Failure to Accommodate claims; and

- The Second Amended Complaint's ADA and Rehabilitation Act Retaliation claims.

The City's Motion to Dismiss will be granted without leave to amend as to:

- The Second Amended Complaint's § 1981 Retaliation claims; and

- The Second Amended Complaint's Procedural Due Process claims.

The City's Motion to Dismiss will be granted with leave to amend as to:

- The Second Amended Complaint's anxiety related ADA and Rehabilitation Act Disability Discrimination claims;

- The Second Amended Complaint's anxiety related ADA and Rehabilitation Act Failure to Accommodate claims; and

- The Second Amended Complaint's Title VII Gender Discrimination claim.

Ms. Mundy may file a Third Amended Complaint by January 12, 2023.  If Ms. Mundy files a Third Amended Complaint, the City shall file its responsive pleading within 14 days of Ms. Mundy's filing of a Third Amended Complaint.  If no third Amended Complaint is filed, the City shall file its Answer to the surviving claims within the Second Amended Complaint by January 26, 2023.  An appropriate Order will be entered.

DATE: 12/22/2022

Marilyn J. Horan
United States District Judge